**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| RENEWABLE FUELS ASSOCIATION,<br>AMERICAN COALITION FOR ETHANOL,<br>GROWTH ENERGY,<br>NATIONAL BIODIESEL BOARD,<br>NATIONAL CORN GROWERS ASSOCIATION, and<br>NATIONAL FARMERS UNION,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | Case No.: 19-1220 |

**PETITIONERS' RESPONSE IN OPPOSITION TO EPA'S MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR**

Petitioners the Renewable Fuels Association, American Coalition for Ethanol, Growth Energy, National Biodiesel Board, National Corn Growers Association, and National Farmers Union and Respondent Environmental Protection Agency ("EPA") respectfully submit this response in opposition to EPA's motion for voluntary remand without vacatur. Petitioners do not oppose remand so long as the challenged agency actions are vacated. Alternatively, Petitioners suggest an abeyance of this case for up to 90 days during which time

EPA can reconsider the agency actions and determine which actions should be reversed.

## INTRODUCTION

The challenged agency actions have inflicted serious injuries to Petitioners' members—farmers and biofuels producers. To remedy those injuries, Petitioners filed this action to vacate the agency actions. EPA now requests an unconditional remand without vacatur, which would allow the agency to evade judicial review indefinitely and thereby prolong the injuries that Petitioners' members are suffering. Since none of the rationales EPA provides support an open-ended remand, the Court should deny the agency's request.

The prejudice of a remand could be diminished only if the Court orders remand *with* vacatur. Vacatur is, after all, the remedy Petitioners would be entitled to if they prevail on the merits. Vacatur also prevents EPA from indefinitely delaying judicial review and preserves Petitioners' ability to renew their case if EPA makes the same errors on remand.

Alternatively, the Court could provide a brief abeyance of this case for no more than 90 days to allow EPA to determine which small refinery exemptions should be vacated and remanded because it has decided to reverse its earlier determination. The ensuing remand period should be brief as well, not exceeding

60 days, for EPA to explain the change in its position. For those exemptions EPA lets stand, EPA should be judged on the record it has already provided.

## BACKGROUND

### I. The Proceedings in This Case

Petitioners filed the petition for review in this case on October 22, 2019. *See* ECF No. 1812533. The petition challenges EPA's decision extending exemptions to 31 small refineries from compliance with their obligations under the Renewable Fuel Standard ("RFS") program (the "Decision"). The Decision was memorialized in a memorandum signed by then-Acting Assistant Administrator of EPA's Office of Air and Radiation, Anne Idsal, on August 9, 2019. *See* Pet. for Review, Attachment A, ECF No. 1812533.

Between October 2019 and August 2020, the parties submitted their initial filings, the impacted small refineries moved to intervene, and the parties obtained a protective order to govern the proceedings. On October 27, 2020, the Court issued an order setting the briefing schedule. *See* ECF No. 1868536. EPA requested an additional 45 days to file its response brief, *see* ECF No. 1869853, which the Court granted, *see* ECF No. 1876626. Petitioners filed their opening brief on December 7, 2020. *See* ECF No. 1874746.

On January 8, 2021, the Supreme Court granted a petition for certiorari involving one of the issues raised by Petitioners in this case. *See HollyFrontier*

*Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172 (2021) ("*HollyFrontier*"). On February 2, 2021, EPA moved to hold this case in abeyance pending the Supreme Court's decision in *HollyFrontier*. *See* ECF. No. 1880469. On February 17, 2021, this Court granted EPA's motion and directed the parties to file a motion to govern future proceedings within 30 days of the Supreme Court's decision. *See* ECF No. 1885774.

## II. The Supreme Court's Decision in *HollyFrontier*

In the underlying case, *Renewable Fuels Association v. EPA*, 948 F.3d 1206 (10th Cir. 2020), *rev'd in part sub nom. HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172 (2021) ("*RFA*"), a group of petitioners, including some of the Petitioners here, challenged EPA's decisions to extend small refinery exemptions to three refineries for the 2016 and 2017 compliance years. The Tenth Circuit issued an opinion on January 24, 2020, invalidating the challenged decisions on three grounds. First, the court held that EPA exceeded its statutory authority by granting extensions of exemptions to refineries whose exemption had lapsed. *See* 948 F.3d at 1246. Second, the court held that EPA exceeded its statutory authority by "[g]ranting extensions of exemptions based at least in part on hardships not caused by RFS compliance." *See id.* at 1254. And third, the court held that EPA's decisions were arbitrary and capricious because EPA "ignored or failed to provide reasons for deviating from prior studies showing

that" the costs of purchasing the credits needed to show RFS compliance (*i.e.*, "RINs") "do not disproportionately harm refineries which are not vertically integrated" since "merchant refineries typically recoup their RIN purchase costs through higher petroleum fuel prices." *See id.* at 1255-1257.[1]

On September 4, 2020, intervenors in *RFA*, HollyFrontier Cheyenne Refining, LLC, HollyFrontier Refining and Marketing, LLC and HollyFrontier Woods Cross Refining, LLC (together, "HollyFrontier"), and Wynnewood Refining Company, LLC ("Wynnewood") filed a petition for a writ of certiorari. The question presented implicated only one of the Tenth Circuit's three holdings: "In order to qualify for a hardship exemption under § 7545(o)(9)(B)(i) of the Renewable Fuel Standards, does a small refinery need to receive uninterrupted, continuous hardship exemptions for every year since 2011." The Supreme Court granted the petition on January 8, 2021.

[1] EPA mistakenly asserts that "the Biofuels Petitioners raise the substance of *one* of the alternative holdings of the Tenth Circuit in their merits brief." EPA Mot. 10 (emphasis added). This is inaccurate; Petitioners assert that the Decision violated *both* of the alternative holdings of the Tenth Circuit—namely, (1) that EPA may issue small refinery exemptions only where it finds disproportionate economic hardship caused by the RFS program and (2) that it is arbitrary and capricious for EPA to fail to explain how it can find a small refinery suffering a disproportionate economic hardship sufficient to justify an exemption when the agency has consistently concluded that RFS compliance costs are passed through and recovered by all refineries in the cost of the goods they sell. Pet'rs Br. 34-37, 42.

The Supreme Court issued a decision in *HollyFrontier* on June 25, 2021, reversing the Tenth Circuit's holding on the issue before it. The Court held that "[t]he respondents have not shown that EPA's approval of the petitioners' extension requests was in excess of the Agency's authority. To the extent the court of appeals vacated EPA's orders on this ground, the judgment is reversed." *See* 141 S. Ct. at 2183 (emphasis added).

### III. Current Status

The decision in *HollyFrontier* triggered a deadline of July 26, 2021, for the parties to file motions to govern in this case. On July 21, 2021, EPA moved the Court to extend the deadline for motions to govern until August 25, 2021. *See* ECF No. 1907268. This Court granted the extension on August 3, 2021. *See* ECF No. 1908808. On August 23, 2021, two days before the extended deadline, EPA notified counsel for Petitioners of its intent to file a motion for remand without vacatur in lieu of a motion to govern further proceedings.

## ARGUMENT

### I. Legal Standard for Voluntary Remand to Agency

"[A] voluntary remand is typically appropriate only when the agency intends to revisit the challenged agency decision on review." *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017). An "agency may not reconsider its own decision if to do so would be arbitrary, capricious, or an abuse of discretion."

*Macktal v. Chao*, 286 F.3d 822, 826 (5th Cir. 2000). And, "an agency's reconsideration of its own decision may in some contexts be unwarranted, or even abusive." *See Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004). "[I]f the agency's request appears to be frivolous or made in bad faith, it is appropriate to deny remand." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

## II. The Court Should Deny EPA's Request for Remand Without Vacatur

Petitioners' legal right to challenge EPA's decisions to extend small refinery exemptions is embedded in the text of the Clean Air Act, *see* 42 U.S.C. § 7607(b), and EPA's attempt to evade judicial review is not an appropriate ground for remand. At bottom, none of EPA's stated reasons for seeking remand overcome the prejudicial effect that remand would have on Petitioners.

### A. Petitioners Would be Unduly Prejudiced by Remand Without Vacatur

"In deciding a motion to remand, the court considers whether remand would unduly prejudice the non-moving party." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). Petitioners would be unduly prejudiced here because the limitless remand requested by EPA would leave them without relief for the harm they have suffered due to EPA's actions. *See id.* ("declin[ing] the EPA's request to remand the challenge to the agency's authority" because "even if

Industry Petitioners are willing to go along with a remand, Environmental Petitioners are not and remand would prejudice the vindication of their own claim"). EPA could drag its feet for years while the exemptions remain in place, prolonging the severe harms the exemptions have inflicted on the Petitioners and robbing Petitioners of their ability to secure judicial relief.[2]

Petitioners include companies that manufacture and sell the most common renewable fuels (i.e., ethanol and biodiesel) to blenders and sellers of gasoline, as well as agricultural producers of corn and other feedstocks used to produce renewable fuel. When EPA extends small refinery exemptions, the demand for renewable fuel is reduced. The 31 small refinery exemptions EPA granted in the Decision covered about 1.3 billion gallons of renewable fuel.[3] The resulting decline in demand reduced the ethanol industry's revenue by about $109 million, and lower ethanol prices reduced revenue by another $439 million. *See* Pet'rs Br.,

---

[2] While Petitioners could seek for a writ of mandamus to force action, the prospect of relief through a writ of mandamus would be remote and would disadvantage the Petitioners. *See American Hospital Assoc. v. Burwell,* 812 F.3d 183, 189 (D.C. Cir. 2016) ("The remedy of a mandamus is a drastic one, to be invoked only in extraordinary circumstances.") (citing *Power v. Barnhart,* 292 F.3d 781, 784 (D.C. Cir. 2002)). Indeed, this Court has been reluctant to grant mandamus relief even where EPA's foot dragging is extreme and thwarts this Court's rulings. *See Americans for Clean Energy v. EPA*, No. 16-1005, ECF No. 1882107 (denying motion to enforce mandate where EPA had failed even to propose a remedy for an adjudicated error three-and-a-half years after this Court remanded).

[3] RFS, *Small Refinery Exemptions*, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rfs-small-refinery-exemptions.

Richman Decl. ¶17-18, 25. The decline in consumption and prices that resulted from the Decision contributed to the idling of ethanol plants in the second half of 2019—at least five plants idled during August and September (immediately after the Decision was issued), and one plant closed permanently. *Id.* ¶25; Pet'rs Br., Jennings Decl. ¶19 & n.2. The biomass-based diesel industry likewise suffered as a consequence of the Decision; an estimated reduction in demand of almost one billion gallons forced ten biodiesel production facilities to shut down in 2019. *See* Pet'rs Br., Rehagen Decl. ¶¶13-14.

The depressive effect of these illegal exemptions on the RFS program's volume requirements continues to this day. Because EPA did not account for the 31 exemptions when it set the renewable fuel volume requirements for 2018 (or any other year), those exemptions effectively reduced the volume of renewable fuel that obligated parties were required to use in 2018. And, because RINs that should have been needed to meet the required volumes were freed up for compliance in a future year, the exemptions provided obligated parties with a RIN windfall. These excess RINs were carried over for use in future compliance years, creating a "RIN bank" that effectively transferred the renewable-fuel shortfall caused by the exemptions to later years. In sum, as obligated parties continue to use carryover RINs resulting from the challenged exemptions to satisfy their future

RFS obligations, Petitioners' members will continue to suffer economic harm. *See* Pet'rs Br., Richman Decl. ¶28.

A limitless remand could deprive Petitioners of their ability to redress such ongoing harms and thus would be highly prejudicial. Remand *with* vacatur, however, could provide EPA the opportunity to reconsider these exemptions while also redressing Petitioners' harm. If the exemptions were vacated, EPA would have to require the obligated parties to retire RINs to meet the formerly exempted obligations, which would in turn raise the demand for renewable fuels and feedstocks, and correspondingly raise their prices. *See* Pet'rs Br. 21, Skor Decl. ¶23, Cooper Decl. ¶21.

### B. EPA Cannot Use Remand Without Vacatur to Bolster the Insufficient Administrative Record

In support of its request for remand, and in response to Petitioners' "various arguments that EPA's Decision does not provide a reasoned basis for the underlying adjudications of petitions for extensions of the small refinery exemption," EPA states that it "seeks an opportunity to consider whether to provide a more robust explanation for the adjudications underlying the Decision." EPA Mot. 13. But a remand simply to "consider" whether to provide a new justification is an abuse of the Court's time and unfair to the Petitioners' claims. Unless EPA vacates its prior Decision, it should not be allowed to recreate the "reasoned decisionmaking" required under the Administrative Procedure Act by

supplying a *post hoc* justification of its initial Decision, *years* after the fact, through a remand. *See Action on Smoking Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 798 n.2 (D.C. Cir. 1983) ("[A] remand may be more appropriate where … there was contemporaneous explanation of the agency decision. … When the required explanation of the agency's action is totally absent, or 'palpably inadequate,' it is difficult to see how a subsequent explanation by the agency on remand could be characterized as anything other than a wholly *post hoc* rationalization.").

EPA may provide whatever substantiation it needs to support new determinations after vacatur, but to the extent that EPA seeks remand only that it can "provide a more robust explanation of its action" in issuing the Decision (EPA Mot. 13), EPA's request should be denied. *Action on Smoking Health*, 713 F.2d at 798 n.2 (*post hoc* explanations, while not fatal, are "undesirable").

## III. There Are Other Options for Allowing EPA to Reconsider the Decision Without Prejudicing Petitioners

### A. The Court Could Remand With Vacatur

The prejudicial effect of remand on Petitioners could be eliminated if the Court remands the Decision *with* vacatur. Remand with vacatur would protect the Petitioners from indefinite agency inaction, while preserving the Petitioners' right to renew their challenges if EPA issues revised small refinery extension exemption decisions on remand.

In deciding whether to remand with or without vacatur, courts consider "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *See Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990). Here, EPA's two-page Decision is facially flawed, offering virtually no analysis to support the 31 small refinery exemptions that were granted. Indeed, even EPA has expressed significant doubt as to whether it could salvage the Decision on remand. While EPA notes that it does not "confess error," it certainly comes close, and its clear skepticism regarding the validity of the Decision indicates that remand *with* vacatur would be a more appropriate remedy here. For instance, EPA "does acknowledge that its stated rationale for the thirty-six adjudications that underlie the Decision is abbreviated and could benefit from further explanation on remand[.]" EPA Mot. 10.

Whatever disruption a vacatur might entail would be less than the disruption to the renewable fuels industry caused by the loss of more than one billion gallons of renewable fuel as a result of EPA's Decision.

### B. The Court Could Provide for a Brief Abeyance of these Proceedings While EPA Reconsiders the Decision

Alternatively, the Court could stay these proceedings for a period of up to 90 days to allow EPA to reconsider the Decision and determine which of the 31 small

refinery exemptions should be reversed.[4] Courts frequently hold proceedings in abeyance pending further agency action on reconsideration. *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012) ("[T]o protect against the unlikely and unpredictable, we can hold the case in abeyance pending resolution of the proposed rulemaking, subject to regular reports from EPA on its status."); *Sw. Bell. Tel. Co. v. FCC*, 1994 U.S. App. LEXIS 14160, at *1 (D.C. Cir. 1994) ("Strong considerations of judicial and administrative efficiency counsel in favor of deferring consideration of the petition for review until agency reconsideration is complete.").

A limited timeframe for EPA to determine which exemptions should be reversed is reasonable here because EPA already has the information it needs to review the Decision—the refineries' exemption applications and the Department of Energy's analysis and recommendations—and EPA has had well over one year to consider the impact of *RFA* on its adjudication of small refinery exemption applications. Any further delay in reconsideration of the Decision would severely prejudice Petitioners because the Petitioners' opportunity to seek redressability for their harm becomes more attenuated the longer the exemptions remain in place. And, an abeyance, rather than a remand, would preserve Petitioners' legal

---

[4] Given the numerous flaws in all 31 of the small refinery exemptions addressed by the Decision, Petitioners reserve the right to continue their challenge to any and all of the small refinery exemptions EPA decides not to reverse.

challenges while this reconsideration takes place and thus would conserve the resources that have already been expended on this case.

If the Court holds the case in abeyance while EPA reconsiders its Decision, Petitioners request that, by the end of the 90-day abeyance period, EPA determine and inform the parties and the Court which exemptions it intends to reverse and which it intends to affirm. For exemptions that EPA intends to reverse, this Court should vacate and remand to EPA, with the ensuing remand limited to 60 days. For exemptions that EPA intends to affirm, EPA should be prepared to defend the record upon which it made such determinations initially.

Finally, Petitioners respectfully request that EPA be required to make public its revised determinations, regardless of whether those determinations follow a vacatur and remand or an abeyance of these proceedings.

## CONCLUSION

For the reasons set forth herein, Petitioners respectfully request that this Court deny EPA's motion for remand without vacatur and, instead, ensure that Petitioners' harm is redressed by either remanding with vacatur or by providing a 90-day abeyance of this case to allow EPA to determine which exemptions should be reversed, followed by a remand for up to 60 days to enable EPA to implement those determinations.

Date: September 7, 2021

Respectfully submitted,

/s/ *Matthew W. Morrison*
Matthew W. Morrison
Shelby L. Dyl
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8036
matthew.morrison@pillsburylaw.com
shelby.dyl@pillsburylaw.com

*Counsel for Petitioners Renewable Fuels Association, American Coalition for Ethanol, National Biodiesel Board, National Corn Growers Association, and National Farmers Union*

Seth P. Waxman
David M. Lehn
Drew Van Denover
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
seth.waxman@wilmerhale.com
david.lehn@wilmerhale.com
drew.vandenover@wilmerhale.com

*Counsel for Petitioner Growth Energy*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,116 words, excluding the exempted portions, as provided in Fed. R. App. P. 32(f). As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(5)-(6) because it was prepared in proportionally-spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Date: September 7, 2021

Respectfully submitted,

/s/ *Matthew W. Morrison*
Matthew W. Morrison

**CERTIFICATE OF SERVICE**

I certify that on September 7, 2021, I electronically filed the foregoing response with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: September 7, 2021

Respectfully submitted,

/s/ *Matthew W. Morrison*
Matthew W. Morrison